## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JACQUELINE BELL,

*Plaintiff*,

v.

JPMORGAN CHASE BANK, N.A.,

*Defendant*.

Civil Case No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

### PRELIMINARY STATEMENT

1.      Plaintiff is a victim of unauthorized transactions that occurred from her JP Morgan Chase ("Chase") accounts: Chase Total Checking account ending in 1609 ("First Chase Account"), and Chase Premiere Plus Checking account ending in 8337 ("Second Chase Account"), (collectively, the "Accounts").

2.       On July 3, 2023, Plaintiff became aware of a fraudulent transfer from her account with Defendant ending in  (the Account).

3.      The amount transferred out of Plaintiff's Account totaled XDR0.00 (the Stolen Funds) plus bank charges for wire transactions.

4.      Plaintiff promptly and repeatedly contacted Defendant regarding the disputed transaction(s) and provided supporting documentation, but to no avail.

5.      Plaintiff brings claims against Defendant for violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA").

### JURISDICTION AND VENUE

6.      The Court has jurisdiction pursuant to 15 U.S.C. § 1693m  and 28 U.S.C. § 1331.

7.      Venue is proper in this District because Defendant is headquartered in this jurisdiction and a substantial part of the events and occurrences underlying this litigation

occurred within this District.

**PARTIES**

8.      Plaintiff is a natural person, a citizen of the United States, residing in Cobb County, Georgia.

9.      Plaintiff is a 'consumer" as defined by each of the relevant statutes.

10.     Defendant is a national banking association formed under the laws of the United States and was, at all times relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).

**FACTUAL ALLEGATIONS**

11.     Plaintiff maintains the Accounts with Defendant.

12.     Plaintiff uses the account for personal, family and household use, and not for commercial use.

13.     On May 29, 2024, Plaintiff received an email which appeared to be from PayPal and informed the Plaintiff about the purchase of a television.

14.     Surprised by this unauthorized purchase, Plaintiff immediately contacted the phone number provided in the email regarding this unauthorized transaction.

15.     Plaintiff then spoke with the fraudster who pretended to be a PayPal representative.

16.     Plaintiff was made to believe by the fraudster that hackers attempted to transact using her online credentials.

17.     Plaintiff was then reassured by the fraudster that payment for the purchase of the television was still pending and that cancellation of the transaction was still possible.

18.     Plaintiff was then instructed to install an application and to log her online account, via facial recognition.

19. Thereafter, Plaintiff was informed by the fraudster that the purchase for the television was successfully canceled, and the call was disconnected.

20. On or about May 31, 2024, Plaintiff opened her Accounts online and noticed several unauthorized Zelle transactions, with $9,998.00 taken out of Plaintiff's Accounts.

21. On that same day, Plaintiff visited Defendant's branch located at 125 Ernest W. Barrett Parkway NW, Unit 201, Marietta, GA 30066, to report the incident.

22. Plaintiff spoke with a branch manager, Joanne Mejias, who investigated Plaintiff's accounts, verified the occurrence of several transactions via Zelle, and confirmed that the recipient of the Zelle transfers was a certain "Martella Lawall" with phone number 708-925-7057.

23. Plaintiff does not know "Martella Lawall" or have any relationship with this individual.

24. After speaking with Ms. Mejias, who contacted Defendant's fraud department, Plaintiff submitted a written dispute questionnaire, provided by Defendant, to their fraud department.

25. In response to the incident, the branch manager closed both the First Account and Second Account and assigned new account and routing numbers to the Plaintiff.

26. On or about June 6, 2024, Plaintiff went to the Cobb County Sheriff's Office to report the incident and was recorded as Incident Case Number 24-05191, which was later forwarded to Defendant.

27. In the same day, Plaintiff received a written message on her Chase Mobile App from Defendant, denying her claim.

28. Defendant stated that the reason for denying the claim was because Plaintiff had accessed her mobile app that day through facial recognition. Defendant's message did not allow Plaintiff to request the documents used in their investigation into this incident.

29.     On or about June 11, 2024, Plaintiff filed an online claim with the FBI's Internet Crime Complaint Center reiterating the incident and unauthorized transactions, which was later forwarded to Defendant.

30.     Sometime in June 2024, Plaintiff received her Chase bank statement for June 2024 and learned that the fraudster made four (4) unauthorized transactions between May 29, 2024, and May 30, 2024, from her First Account to her Second Account, as follows:

    a.  5/29     Online Transfer to Chk … 8337 Transaction#: 20919805124 936.00

    b.  5/29     Online Transfer to Chk … 8337 Transaction#: 20920017029 1,499.00

    c.  5/29     Online Transfer to Chk … 8337 Transaction#: 20920031966 4,060.00

    d.  5/30     Online Transfer to Chk …8337 Transaction#: 20930319203 5,000.00

31.     The fraudster then transferred the funds from the Second Chase Account to her Zelle account, as shown in her June 2024 bank statement:

    a.  5/29     Zelle Payment to Jacqueline Bell Jpm99Ahtd9Xz    $936.00

    b.  5/29     Zelle Payment to Jacqueline Bell Jpm99Ahtd3Qd    $4,064.00

    c.  5/30     Zelle Payment to Jacqueline Bell Jpm99Ahv47G8    $4,000.00

    d.  5/30     Zelle Payment to Jacqueline Bell Jpm99Ahv64Q    $998.23

32.     The Stolen Funds were then transferred from Plaintiff's Zelle account to an unknown Zelle account linked to 708-925-7057 and registered under "Martella Lawall" with a Bank of America account.

33.     On or about July 31, 2024, Plaintiff sent a second dispute letter dated July 5, 2024, to Chase, via certified mail and attached the filed police report and FBI Internet Crime complaint.

34.     To date, Defendant has failed to investigate the incident and respond to the July 5th written dispute letter.

35.     Defendant has not reimbursed Plaintiff for the Stolen Funds.

## CAUSE OF ACTION

### Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq.*

36.     Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

37.     Under the EFTA, Regulation E, and Regulation E's Official Interpretations, Defendant bears the responsibility for unauthorized transfers and withdrawals such as the Unauthorized Transfers at issue.

38.     Pursuant to 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers; limit" states in relevant part as follows:

> In no event. . . shall a consumer's liability for an unauthorized transfer exceed the lesser of-
>
> (1) $50; or
>
> (2) the amount of money or value of property or services obtained in such, unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected.

39.     Thus, the consumer's liability for unauthorized use is generally capped at a maximum of $50 for unauthorized transfers.

40.     This cap is increased to $500 dollars where the consumer waits more than two business days after becoming aware of the unauthorized transaction to notify the financial institution. 15 U.S.C. 1693g(a)(2).

41.     The rules are elucidated in Regulation E, 12 C.F.R. § 1005.6(b):

> (b) Limitations on amount of liability. A consumer's liability for an unauthorized electronic fund transfer or a series of related unauthorized transfers shall be determined as follows:
>
> > (1) Timely notice given. If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution.
> >
> > (2) Timely notice not given. If the consumer fails to notify the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $500 or the sum of:
> >
> > > (i) $50 or the amount of unauthorized transfers that occur within the two business days, whichever is less; and
> > >
> > > (ii) The amount of unauthorized transfers that occur after the close of two business days and before notice to the institution, provided the institution establishes that these transfers would not have occurred had the consumer notified the institution within that two-day period.

42.     Denials based on a consumer's alleged negligence are expressly prohibited under EFTA's implementing regulations. *See* Consumer Financial Protection Bureau, Comment for 1005.6 Liability of Consumer for Unauthorized Transfers, 6(b)(2) ("Negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E. Thus, consumer behavior that may constitute negligence under state law, such as writing the PIN on a debit card or on a piece of paper kept with the card, does not affect the consumer's liability for unauthorized transfers.")

43.    Under the EFTA, consumers, like Plaintiff, who are tricked into providing access by a scammer posing as an employee of a known, legitimate company, are not liable for the transactions initiated by the scammer, which are unauthorized electronic fund transfers under § 1693a(12).  *See, e.g.*, Official Interpretation of Regulation E, 12 C.F.R. § 1005.2(m)(3) ("Access device obtained through robbery or fraud. An unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery."); *See also*, *Green v. Capital One, N.A.*, 557 F. Supp. 3d 441 (S.D.N.Y. 2021) (holding that access to account information that was furnished in the first instance under fraudulent pretenses is not authorized access under the EFTA).

44.    Thus, Chase's failure to reimburse Plaintiff is patently unlawful and in violation of Section § 1693g.

45.    The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized.  15 U.S.C. § 1693g(b).

46.    Defendant cannot meet its burden of proof here, where Plaintiff:

   a) Promptly disputed the transactions;

   b) Provided the requested documentation

   c) Has no criminal history;

   d) Has no history of filing false disputes; and

   e) The thefts are inconsistent with Plaintiff's pattern of use.

47.    Defendant violated the EFTA by failing to provide any meaningful explanation of the grounds upon which it relied in denying Plaintiff's claim. 15 U.S.C. § 1693f(d).  *See* CFPB Supervisory Highlights, Issue 22, Summer 2020, Section 2.3.3 ("Financial institutions must go beyond just providing the findings to actually explain or give the reasons for or cause of those findings.").

48.     Specifically, given the type of fraud that occurred and was described to Defendant, the fact that facial recognition was used in accessing Plaintiff's account is a feature of the fraud, not proof against its occurrence.

49.     Defendant also violated the EFTA by failing to provide Plaintiff with notice of her right to request reproductions of all documents which Defendant relied on to conclude that an error did not occur, as required under 15 U.S.C. § 1693f(d), as there was nothing in her denial message that allowed her to request the documents used in the investigation.

50.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered actual damages, including but not limited to past and future monetary loss, past and future mental distress, emotional anguish, and other damages that will be presented to the trier of fact.

51.     Defendant did not conduct a good faith investigation regarding the Stolen Funds, by failing to respond to Plaintiff's dispute letter appealing Defendant's decision.

52.     Defendant did not have a reasonable basis for believing the account was not in error based on the evidence Plaintiff provided to Defendant, including a police report and FBI incident report.

53.     Specifically, Defendant's conduct as set forth herein constitutes a failure to investigate in good faith and a failure to establish a reasonable basis for believing that Plaintiff's account was not in error, and also constitutes a knowing and willful conclusion that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the available evidence, and for this reason constitutes a violation of §1693f(e), entitling Plaintiff to treble damages in addition to all other relief sought herein.

54.     As a direct and proximate result of Defendant's violations of the EFTA, Plaintiff is entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seek(s) judgment in her favor and damages against Defendant:

A.      awarding Plaintiff actual damages, treble damages, statutory damages, punitive damages, costs, and reasonable attorneys' fees; and

B.      such other and further relief, including equitable and declaratory relief, as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demand(s) a trial by jury of all issues triable by jury.

Dated: March 20, 2025

_/s/Daniel A. Schlanger_
Daniel A. Schlanger
Schlanger Law Group, LLP
150 Allens Creek Road
Rochester, NY 14618
T: 212-500-6114
F: 646-612-7996
E: dschlanger@consumerprotection.net

*Attorney for Plaintiff*